#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANDREA D. W., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-cv-00523-JFH-SH |
| ) | |
| KILOLO KIJAKAZI,[1] Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Pursuant to 42 U.S.C. § 405(g), Andrea D. W. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **REVERSED AND REMANDED**.

### I.   Disability Determination and Standard of Review

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff applied for Title II disability benefits on August 30, 2018, with a protective filing date of August 27, 2018. (R. 15, 157-60.) In her application, Plaintiff alleged she has been unable to work since August 13, 2018, due to conditions including bipolar disorder with manic episodes, post-traumatic stress disorder ("PTSD"), and generalized anxiety disorder. (R. 157, 184.) Plaintiff was 45 years old at the time of the ALJ's decision. (R. 24, 157.) Plaintiff has a high school education and past relevant work as a Childcare Worker and Optical Packing and Shipping Clerk. (R. 37-40, 47, 185.)

Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 80-83, 87-92.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which the ALJ conducted on December 10, 2019. (R. 30-50, 95-96.) The ALJ issued a decision on January 3, 2020, denying benefits and finding Plaintiff not disabled. (R. 15-24.) The Appeals Council denied review on August 11, 2020 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff timely filed this appeal on October 14, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2023. (R. 17.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 13, 2018.[2] (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) major depressive disorder; (2) generalized anxiety disorder; and (3) PTSD. (R. 18.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 18-19.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff had the RFC to perform "a full range of work at all exertional levels," with the following non-exertional limitations:

> The claimant can perform simple and some detailed tasks that are repetitive and routine with a reasoning level of three or below. The claimant should not have strict production standards or quotas ([d]efined as no fast-paced assembly line work such as chicken processing). The claimant can have occasional contact with coworkers and supervisors but only cursory and superficial contact with the general public ([d]efined as generally working with things rather than people).

(R. 19-20.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 20-22.) At step four, the ALJ found Plaintiff unable to perform her past relevant work as a Childcare Worker and Optical Packing and Shipping Clerk. (R. 22-23.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as Industrial Sweeper Cleaner and Laundry Sorter. (R. 23-24.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 24.)

---

[2] The ALJ noted that, while Plaintiff worked after her alleged disability onset date, such work did not rise to the level of substantial gainful activity. (R. 17-18.)

**IV.    Issues**

Plaintiff lists three allegations of error in her opening brief. (ECF No. 19 at 3.) However, the undersigned notes six different legal and factual challenges to the ALJ's decision contained within these listed "errors." (*Id.* at 3-15.) Plaintiff asserts: (1) the RFC should have included a limitation to one-to-two-step tasks, eliminating the step-five finding that Plaintiff could perform the job of Laundry Sorter[3] (*id.* at 3-7); (2) the ALJ failed to address the severity of Plaintiff's bipolar disorder and agoraphobia and failed to consider these impairments throughout the sequential evaluation (*id.* at 7-8); (3) the ALJ failed to properly consider Dr. Van Tuyl's opinions and the prior administrative medical findings (*id.* at 8-13); (4) the ALJ improperly found Plaintiff did not meet or medically equal Listing 12.04 (*id.* at 12-13); (5) the ALJ engaged in a selective and incomplete review of the record, as evidenced by his failure to discuss the multiple *Third-Party Function Reports* completed by Plaintiff's mother, Peggy Holloway (*id.* at 13); and (6) the ALJ failed to engage in a "consistency" analysis of Plaintiff's complaints, demonstrated by his failure to evaluate the factors set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) (*id.* at 13-15).

Most of Plaintiff's arguments do not support reversal. The undersigned, however, finds the ALJ committed reversable error when he wholly ignored the *Third-Party Function Reports* completed by Plaintiff's mother. (*See generally* R. 15-24, 215-22, 232-39, 288-93.) Because the ALJ is obligated to consider the entire administrative record,[4] the Commissioner's decision should be reversed and remanded for further proceedings.

---

[3] Were Laundry Sorter eliminated, the only job left would be Industrial Sweeper Cleaner, with 70,000 jobs nationally. (R. 23.) Plaintiff argues that one job would not support a finding that "a significant number of jobs exist for Claimant in the national economy." (ECF No. 19 at 6.)

[4] *See* 20 C.F.R. § 404.1520(a)(3).

V.     **Analysis**

    A.     **Peggy Holloway's Third-Party Function Reports**

Plaintiff's mother, Peggy Holloway, submitted three *Third-Party Function Reports* that largely corroborated Plaintiff's alleged functional limitations. (*See* R. 215-22 (Nov. 20, 2018), 232-39 (Jan. 19, 2019), 288-93 (Nov. 15, 2019).) Specifically, Ms. Holloway documented limitations in Plaintiff's ability to manage her anxiety in a work environment, complete housework, feed and care for her children and pets, sleep, complete personal care activities, shop and handle money, interact with others, remember tasks or instructions, complete tasks, concentrate, understand and follow instructions, and handle stress. (*Id.*) While these reports corroborate much of what is contained in Plaintiff's own *Function Reports*, they contain additional information as well. (*Compare, e.g.*, R. 218 (reporting that Plaintiff could only handle money with help), 219 (noting that, contrary to Plaintiff's contentions, Plaintiff went out to eat weekly), 220 (noting Plaintiff was more limited than she reported in her ability to complete tasks, understand, and get along with others, and that she could only pay attention for between 30 minutes and one hour), 221 (reporting that Plaintiff handled changes in routine "okay"), 238 (reporting that she witnessed the kind of behavior associated with Plaintiff's bipolar disorder diagnosis), 239 (noting that Plaintiff was slow at "any task") *with* R. 207-14, 240-48.)

Nowhere in the decision,[5] however, does the ALJ specifically mention or indicate he considered these reports. (R. 15-24.) Instead, the ALJ generally noted that he gave

---

[5] At the hearing, Plaintiff's attorney mentioned that a page was missing from one of the Third-Party Reports, and the ALJ briefly requested information on what was on the missing page and informed the attorney how to submit the correction. (R. 32-33.) The ALJ did not, however, discuss the Reports at the hearing, or otherwise indicate in his decision that he had considered them.

6

"careful consideration" to "all the evidence" or "the entire record." (R. 16-17, 19.) This is insufficient to show the ALJ evaluated a category of evidence that he failed to mention or cite. *See Jerri F. v. Kijakazi*, No. 1:20-4037-RMG-SVH, 2021 WL 3362227, at *14 (D.S.C. July 29, 2021) ("The undersigned is not persuaded that the boilerplate language indicating he had considered 'all evidence' is sufficient to demonstrate the ALJ considered the witness statements without any more specific reference to the statements."), *R. & R. adopted,* 2021 WL 3396230 (D.S.C. Aug. 3, 2021); *see also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("boilerplate language fails to inform [the Court] in a meaningful, reviewable way of the specific evidence the ALJ considered"). Because the ALJ is prohibited from dismissing even nonmedical evidence without a modicum of consideration, the undersigned recommends the matter be reversed and remanded.

     **B.**    **The ALJ's Failure to Consider Nonmedical Evidence**

          **1.**    **The Role of Evidence from Nonmedical Sources**

Nonmedical sources are an important tool ALJs use to obtain a complete picture of the claimant's impairments—both in evaluating symptoms and determining the claimant's RFC.

> The information that [the claimant's] . . . nonmedical sources provide about [the claimant's] pain or other symptoms . . . is . . . an important indicator of the intensity and persistence of [the] symptoms. Because symptoms . . . are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that . . . nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . in reaching a conclusion as to whether [the claimant is] disabled.

20 C.F.R. § 404.1529(c)(3); *see also id.* § 404.1529(a) ("We will consider . . . any description [a claimant's] . . . nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and . . . ability to work."); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017) (noting that nonmedical

7

sources may provide information that would be helpful in assessing the effects of a claimant's symptoms).

Similarly, in determining a claimant's RFC, the ALJ will "also consider descriptions and observations of [the claimant's] limitations from [their] impairment(s) . . . provided by . . . family, neighbors, friends, or other persons."  20 C.F.R. § 404.1545(a)(3); *see also id.* § 404.1545(e) ("In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence . . . ."). Consequently, the regulations and Ruling make clear that the ALJ must consider the observations contained in nonmedical sources like Ms. Holloway's *Third-Party Function Reports* when assessing Plaintiff's symptoms, determining her RFC, and, ultimately, deciding whether or not she is disabled.

### 2. Consideration & Articulation Requirements

While an ALJ must consider evidence from nonmedical sources, current regulations do not require a specific level of articulation. So, for example, with claims filed on or after March 27, 2017, the ALJ need not provide the detailed articulation now reserved for medical opinions.[6]  20 C.F.R. § 404.1520c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements

---

[6] For cases filed before March 27, 2017, SSR 06-03p provided the standards for evaluating evidence from "other sources," such as friends or relatives. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  When considering such evidence from nonmedical sources who had not seen the claimant in a professional capacity, the ALJ was to evaluate factors including "the nature and extent of the relationship, whether the evidence [wa]s consistent with other evidence, and any other factors that tend[ed] to support or refute the evidence." *Id*. at *6.  The policies from SSR 06-03p were later codified in 20 C.F.R. § 404.1527 for claims filed before March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,855 (Jan. 18, 2017); *see also* 20 C.F.R. § 404.1527(f)(1) ("[W]e will consider [opinions from nonmedical sources] using the same factors as listed in paragraph (c)(1) through (c)(6) of this section, [although] not every factor for weighing opinion evidence will apply in every case . . . .").

8

in paragraphs (a)-(c) in this section."). However, in certain circumstances some articulation may be appropriate. "Depending on the unique evidence in each claim, it <u>may</u> be appropriate for an adjudicator to provide written analysis about how he or she considered evidence from nonmedical sources . . . ." 82 Fed. Reg. at 5, 850 (emphasis added) (noting that "family members[] and other nonmedical sources of evidence can provide helpful longitudinal evidence about how an impairment affects a person's functional abilities and limitations on a daily basis").

While the need for such a written analysis may vary from case to case, the evidence is still <u>considered</u> in every case: "Our adjudicators will continue to assess an individual's ability to function under these final rules using <u>all</u> evidence we receive from <u>all</u> sources, including nonmedical sources." *Id.* (emphasis added). As a result, a reviewing court should be able to determine from the ALJ's decision that he considered such evidence in performing his duties. This finding is in accord with that of other courts who have considered this issue under the current regulations:

- "While the ALJ is not required to apply medical opinion factors to nonmedical source evidence, the regulations clearly do not contemplate or authorize simply ignoring such evidence that may otherwise be relevant to an ALJ's conclusions and/or findings." *Brooker v. Saul*, No. CIV-20-398-P, 2021 WL 1392860, at *6 (W.D. Okla. Apr. 13, 2021).

- "It may well be the case that the ALJ considered such evidence and properly discounted it, but his opinion leaves the Court with no way to tell. The ALJ's failure to provide any rationale for discounting this [function report] is reversible error." *Sandra S. v. Kijakazi*, No. 3:20-cv-00056-RLY-MPB, 2021 WL 3640000, at *7 (S.D. Ind. Aug. 2, 2021), *R. & R. adopted sub nom. Sandra S. v. Saul*, 2021 WL 3636042 (S.D. Ind. Aug. 17, 2021).

- "Indeed, an ALJ is specifically required to consider all medical and nonmedical evidence, including third party function reports." *Garling v. Kijakazi*, No. 3:20-CV-369-DRL-JPK, 2021 WL 3728544, at *6 (N.D. Ind.

9

July 20, 2021) (citations omitted), *R. & R. adopted*, 2021 WL 3726870 (N.D. Ind. Aug. 23, 2021).[7]

- "[H]ere, the question is not whether the ALJ provided sufficiently-specific reasons for rejecting the lay witness statements. Rather, the question is whether he considered them at all.

  The regulatory changes do not absolve ALJs of the requirement to consider lay witness statements." *Jerri F.*, 2021 WL 3362227, at *14; *see also id.* at *13 (collecting cases upholding an "ALJ's treatment of witness statements where the ALJ specifically acknowledged the presence of the statements").[8]

The undersigned need not decide what sort of discussion would have been enough to show the ALJ considered the evidence from nonmedical sources. Here, the undersigned sees nothing to indicate the ALJ considered Ms. Holloway's evidence at all. And, the Commissioner provides none. The court will not assume the ALJ fulfilled his duties when he provided nothing from which it can base a determination as to whether or not relevant evidence was considered.

---

[7] In *Garling* and other cases, the Commissioner unsuccessfully argued that the new regulations for articulating medical opinions meant "the ALJ is not required to articulate how he considered" nonmedical evidence. *See Garling*, 2021 WL 3728544, at *6; *see also Jerri F.*, 2021 WL 3362227, at *14. The Commissioner did not respond to Plaintiff's argument in the case currently before the Court. However, the Commissioner has made a similar argument in another case before the undersigned, which was rejected for the reasons set forth in that case. *See Miranda R.A. v. Kijakazi*, No. 20-cv-00453-JED-SH, *R. & R.* at 5-13 (N.D. Okla. Jan. 27, 2022).

[8] A small number of cases have excused an ALJ's failure to specifically mention third-party, nonmedical evidence where the ALJ gave a generalized statement that he considered all the evidence or where the evidence was included in the exhibits. *See, e.g., Evans v. Comm'r*, No. CIV-20-080-RAW-KEW, 2021 WL 4478171, at *6-7 (E.D. Okla. Sept. 15, 2021) (ALJ stated he "considered all evidence"), *R. & R. adopted sub nom. Evans v. Kijakazi*, No. CIV-20-80-RAW-KEW, 2021 WL 4476629 (E.D. Okla. Sept. 29, 2021); *Arbuckle v. Comm'r*, No. 3:20-CV-150-RP, 2021 WL 2879968, at *3 (N.D. Miss. July 8, 2021) (statement was "exhibited to the ALJ's decision"). Neither court, however, found that the ALJ was excused from considering the evidence—indeed, the *Evans* court found that the "ALJ is not . . . absolved [by the new regulations] from considering non-medical source evidence when formulating the RFC." 2021 WL 4478171, at *6. To the extent these decisions stand for the proposition that the reviewing court can <u>assume</u> an ALJ considered evidence without any indication in the record that this occurred—other than mere boilerplate language—the undersigned rejects it. *See supra*. at 7.

The undersigned does not find the omission in this case was harmless error.[9] To the extent any "harmless-error determination rests on legal or evidentiary matters <u>not considered by the ALJ</u>, it risks violating the general rule against post hoc justification of administrative action . . . ." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (emphasis added). The Court is prohibited from affirming any "post hoc effort to salvage the ALJ's decision [that] would require [it] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process." *Id*. at 1142. It is the ALJ's duty, and not the duty of the undersigned, to weigh evidence and determine the consistency of a plaintiff's subjective complaints against the entire administrative record. Because the ALJ failed to articulate his consideration of the *Third-Party Function Reports* completed by Plaintiff's mother, and because the ALJ failed to consider the consistency of these statements with Plaintiff's subjective reports as required by SSR 16-3p, or otherwise evaluate the evidence in accord with 20 C.F.R. §§ 404.1529 or 404.1545, the undersigned recommends the matter be reversed and remanded.

## VI. Conclusion and Recommendation

The undersigned Magistrate Judge finds that the ALJ failed to apply the correct legal standards and that substantial evidence did not support the Commissioner's decision. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings.

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation.

---

[9] The Commissioner does not address this specific argument and does not argue that any of the errors asserted by Plaintiff would be harmless. (ECF no. 22 at 4-15.)

Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by February 23, 2022.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 9th day of February, 2022.

**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**